UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 18-107-CJS

JENNIFER EILEEN BISCHOFF                                                              PLAINTIFF

v.                          **MEMORANDUM OPINION AND ORDER**

ANDREW SAUL, Commissioner[1]
of the Social Security Administration                                                  DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Plaintiff Jennifer Bischoff brings this action under 42 U.S.C. § 405(g), challenging Defendant Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act. The parties have consented to the undersigned's authority to adjudicate this action pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* R. 18). At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" within the meaning of the Social Security Act and therefore not entitled to benefits. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, will **affirm** the Commissioner's decision.

I.      STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied correct legal standards and whether the decision is supported by substantial evidence. 42 U.S.C. § 423(a)(1), *et seq.* Substantial evidence means

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019, during the pendency of this action. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Saul is automatically substituted as a party.

1

"more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 229 (1938)). A reviewing court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012).

The Social Security Act requires the Commissioner to follow a five-step analysis when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbot v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that she suffers from a severe impairment. *Id.* at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id.* at 804 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education, or work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, if the impairment does not meet or equal a listed impairment, the claimant must show her impairment prevents her from doing her past relevant work. *Id.* Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work that exists in the national economy. *Id.* (citing *Abbot*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that she is disabled, but the Commissioner bears the burden of

establishing that the claimant can perform other work existing in the national economy. *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Jennifer Bischoff was 43 years old at the time of the alleged disability onset date, and she has at least a high school education. (Administrative Record (A.R.) at 18-19). She alleged disability due to narcolepsy, paralysis, and high blood pressure. *(Id*. at 96).

Plaintiff filed an application for Disability Insurance Benefits on October 21, 2014, alleging disability onset of July 31, 2013. (*Id*. at 166). The claim was denied initially on May 4, 2015, and again upon reconsideration on September 16, 2015. (*Id*. at 96, 102). Plaintiff appeared and testified at an administrative hearing before ALJ Anne Shaugnessy on August 8, 2017. (*Id*. at 27). The ALJ also heard testimony from an impartial vocational expert (VE). (*Id*. at 50). After receiving testimony and reviewing the record, the ALJ issued a written decision on October 30, 2017, finding Plaintiff not disabled under the Social Security Act and therefore not entitled to benefits). (*Id*. at 20).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (*Id*. 10-20). *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since July 31, 2013, the alleged onset date of Plaintiff's disabilities. (*Id*. at 12) (citing 20 C.F.R. § 404.1571, *et seq*.). At step two, the ALJ found that Plaintiff's severe impairments consisted of narcolepsy, cataplexy, obstructive sleep apnea, attention deficit hyperactivity disorder, and depression. (*Id*.) (citing 20 C.F.R. § 404.1520(c)). At step three, the ALJ analyzed the Plaintiff's impairments and the opinions of treating and consultative physicians and found that Plaintiff did not have an impairment that meets or medically

equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 12-14).

Before moving on to step four, the ALJ considered the entire record and determined that Plaintiff Bischoff possessed the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> [Plaintiff] cannot climb ladders, ropes, or scaffolds. She should avoid all exposures to hazards. She can understand and remember simple instructions. She can carry out simple tasks. She can interact occasionally with supervisors and coworkers and the public.

(*Id*. at 14).

After explaining how she determined Plaintiff Bischoff's residual functional capacity, the ALJ found at step four that, based on this residual functional capacity, Plaintiff is unable to perform her past relevant work. At the disability hearing, the ALJ heard testimony from an impartial vocational expert who stated that based upon the residual functional capacity provided by the ALJ, a hypothetical individual with the same vocational factors and residual functional capacity as Plaintiff could not perform any of the Plaintiff's past work. (*Id*. at 51). Based upon the testimony of the vocational expert and consideration of Plaintiff's vocational history, the ALJ found that Plaintiff was unable to perform her past work.

Even in light of this finding, the ALJ found at step five that, following the vocational expert's testimony, due to Plaintiff Bischoff's age, education, work experience, and residual functional capacity, Plaintiff Bischoff could successfully adjust to other work that exists in significant numbers in the national economy. The ALJ used assembler, kitchen helper, and conveyor feeder as representative occupations. (*Id*. at 19).

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council and the Appeals Council denied Plaintiff's request for review. (*Id*. at 1). Since the Appeal's Council

declined to review, the ALJ's decision serves as the Commissioner's final decision. Accordingly, on June 25, 2018, having exhausted her administrative remedies, Plaintiff timely filed her Complaint asserting the ALJ's decision was contrary to law and seeking judicial review in this Court. (R. 2). On October 22, 2018, Plaintiff filed a Motion for Judgment on the Pleadings. (R. 13). In response, Defendant filed a Motion for Summary Judgment on November 21, 2018. (R. 20). The matter is ripe for review on the parties' dispositive motions.

## III. ANALYSIS

On appeal, Plaintiff challenges the ALJ's determination that Plaintiff is not disabled under the Social Security Act, asserting that this determination is not supported by substantial evidence. (*See* R. 13, at 1). Specifically, Plaintiff asserts that the ALJ did not properly analyze the opinion of Plaintiff's treating physician, Dr. Piotr Zieba, under the treating physician rule, despite the fact that the opinion is entirely consistent with one of the consulting examiners, Dr. Vinod Muniswamy. (R. 13-1, at 10). Further, Plaintiff asserts that the ALJ's reasons for giving greater weight to other medical opinions on record lack any reasonable explanation. (*Id*.).

### A. The ALJ committed harmless error by not further elaborating on good reason for not giving Dr. Zieba's opinion controlling weight or more deference.

Plaintiff's major contention in this case is that the ALJ failed to give controlling weight to Dr. Zieba's opinion. In social security disability cases, the ALJ must consider all medical opinions received in evaluating a claimant's case. *See* 20 C.F.R. § 404.1527. The ALJ generally gives deference to the opinions of a treating source. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009) (citing 20 C.F.R. § 416.927(c)(2)). Good reason must be given for the rejection of a treating physician's opinion. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004). If an ALJ finds the opinion of a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence

5

in [the] case record" then the ALJ must give the opinion controlling weight. *Id*. (quoting 20 C.F.R. § 404.1527(d)(2)). Under the treating physician rule, if the adjudicator finds either of those two criteria missing, then the ALJ is required to apply certain factors to determine the weight to give a treating physician's opinion. *Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 723 (quoting *Wilson*, 378 F.3d at 544). These factors are, "the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. . . ." *Id*.

In this case, the ALJ's treatment of Dr. Zieba as a treating physician is sparse. The ALJ's reasoning for the weight given to Dr. Zieba is that it "appears somewhat extreme in light of the record, including the mild to moderate findings observed during the consultative psychological evaluation." (A.R. 18). In Social Security Ruling 96-2p, 1996 WL 374188, at *5 (1996), the Social Security Administration interpreted its rules to require "sufficient specificity" when both determining whether or not a treating physician gets controlling weight and then, if not, what weight it will be given as outlined in the factors listed in 20 C.F.R. § 404.1527(c). As seen in *Wilson*, 378 F.3d at 545, it is an "elemental principal of administrative law that agencies are bound to follow their own regulations." *Wilson*, 378 F.3d at 545. However, "an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Id*. at 546-47 (quoting *Connor v. United States Civil Service Commission*, 721 F.2d 1054, 1056 (6th Cir. 1983)).

The ALJ's treatment of Dr. Zieba's opinion constitutes "harmless error" as defined by the Sixth Circuit in regard to the explanation given when dealing with treating physicians. In *Coldiron*

*v. Commissioner of Social Security*, 491 F. App'x 435, 440 (6th Cir. 2010), the Court stated that even if the ALJ's assessment of a treating physician "failed to adequately comply with the good reason requirement," that such error would be harmless. The Court went on to say that "[v]iolation of the [good reason] rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of the case—even though he failed to comply with the regulation's terms." *Id*.

The case at hand shares a lot of similarities with *Coldiron*. The ALJ did not give adequate reason when dealing directly with Dr. Zieba's opinion, but indirectly questioned the opinion by showcasing inconsistencies in other opinions as well as examining statements by the Plaintiff throughout treatment records. "An ALJ may accomplish the goals of [the good reason] procedural requirement by *indirectly* attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record." *Coldiron*, 391 F. App'x at 441.

When it comes to deciding whether or not a treating physician is entitled to controlling weight, "the regulation requires ALJs to look to the record as a *whole*—not just to medical opinions—to decide whether substantial evidence is inconsistent with a treating physician's assessment." *Hickey-Haynes*, 116 F. App'x at 723-24. In reviewing the ALJ's opinion, the ALJ cites inconsistencies between Plaintiff's complaints and medical opinions, finding that her complaints during the testimony do not match up with the notes of her medical treatment or evidence that she continued working, with the evidence shown in the consultative psychological evaluation of Geoff Schwerzler, Psy.D., or the opinions of state agency medical experts Joshua Rubin, Psy.D. and Dr. Mikhail Bargain.

This indirect attack on the treating physician's opinion accomplishes the goal of the procedural requirements because of the fundamental deficiency in the medical source opinion on

the record. As it is displayed in the record, Dr. Zieba's opinion contains no support from medically acceptable clinical and laboratory diagnostic techniques. The one doctor's visit on record does not provide any insight into the foundation of Dr. Zieba's medical source opinion. (*Id*. at 393-402). Plaintiff makes the contention that Dr. Zieba's opinion is supported by "a polysomnogram, multiple sleep latency test, a series of ESS questionnaires and Plaintiff's complaints supporting her impairment" as well as Dr. Muniswamy's opinion that Plaintiff "might be unable to carryon duties due to the narcolepsy and cataplexy." (R. 13, at 14-15). While all that evidence does point to Plaintiff's issues with narcolepsy, and was examined when the ALJ reviewed the record, none of it appears from the record to have anything to do with Dr. Zieba's medical source opinion.

Also, the Sixth Circuit has shown that a treating physician's opinion that offers conclusions based on areas outside of the physician's expertise and treatment parameters will lack supportability. In *Coldiron*, a cardiologist who treated a patient for heart failure offered a residual functional capacity which appeared to be based primarily on obesity. *Coldiron,* 391 F. App'x at 440. This reasoning can also carry over into the case at hand because, in this instance, evidence of narcolepsy, both in the record and in the comment of Dr. Muniswamy's opinion, is being used to argue for giving Dr. Zieba's medical source opinion controlling weight under the treating physician rule. However, there is no evidence in the record which indicates that Dr. Zieba treated Plaintiff for narcolepsy. There is, in fact, evidence against it. Dr. Zieba, in the medical source opinion, stated that he is treating Plaintiff for "ADHD" and "major depressive disorder." (A.R. at 376). Plaintiff, in testimony to the ALJ, stated that Dr. Zieba was her "behavioral specialist." (A.R. at 45).

In summary, the ALJ committed harmless error when not giving good reason for the weight given to Dr. Zieba's opinions.

**B.  The ALJ did not err when evaluating the weight given to the opinion by Dr. Muniswamy.**

As previously noted, the Code of Federal Regulations outlines how the Social Security Administration considers medical opinions. *See* 20 C.F.R. § 404.1527. The Social Security Administration looks at certain factors in considering the weight they give to any medical opinion. 20 C.F.R. § 404.1527(c). The six factors used in determining the weight of a medical opinion are examining relationship, treatment relationship, supportability, consistency, specialization, and other factors. *Id*. When determining how much weight to assign the opinion of a non-treating source, there needs to be an examination of the factors provided in the regulations, such as how consistent the opinion is with the record as a whole. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(c)).

The main contention Plaintiff gives for according Dr. Muniswamy more weight is that it and the opinion of Dr. Zieba are "entirely consistent with each other." (R. 13-1, at 10). The inference from the Plaintiff's brief is that because Dr. Muniswamy is consistent with a treating source physician, then it is improper to subordinate both opinions to the non-examining state agency consultants.

As stated above, Dr. Zieba's medical source opinion does not concern the treatment of narcolepsy or cataplexy. The line in which Plaintiff gives great weight in Dr. Muniswamy's opinion, that Plaintiff "might be unable to carryon duties" specifically concerns narcolepsy and cataplexy. Without that tie to a treating physician's opinion, there is nothing in the record which would take the ALJ's treatment of Dr. Muniswamy's opinion outside of the protection of the substantial evidence standard of review.

While Dr. Muniswamy is a consulting examiner, consulting examiners are not entitled to the same deference treating physicians are in relation to non-examining consultants. *See Barker*

*v. Shalala*, 40 F.3d 789, 794 (1994). When filtered through the six factors in 20 C.F.R. § 404.1527(c)(2)-(6), the ALJ's decision falls inside the "zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *See Blakley*, 581 F.3d at 406.

The examining relationship with Dr. Muniswamy lasted for one visit. The supportability and consistency is backed by some evidence in the record, as it could be true, from examining the record, that Plaintiff "might be unable to carryon duties due to the narcolepsy and cataplexy." (A.R. at 300). Plaintiff had been diagnosed with narcolepsy in 1998. (A.R. at 336). Plaintiff was treated for some time at the St. Elizabeth's Sleep Disorder Center, where she reported having difficulty with working at her job. (A.R. at 260-95). Plaintiff testified to the ALJ how she needed much longer than four hours to do four hours' worth of work. (A.R. at 33). However, there is support for the other direction as well, enough that it would require the Court to reweigh the evidence to change the ALJ's finding, which is outside the standard of review in Social Security benefit denial appeals. This positive evidence includes the exams of the state agency consultants who found her to be not limited to moderately limited in functioning capacities, such as having sustained attention for two-hour segments and being able to perform work at all exertional levels. (A.R. at 76-91).

In summary, for the Court to re-examine the weight given to Dr. Muniswamy's opinion impermissibly calls for the Court to reweigh the evidence. *See Ulman*, 693 F.3d at 714. Accordingly, because the ALJ relied upon substantial evidence—such relevant evidence as what a reasonable mind might accept as adequate to support a conclusion, the ALJ did not commit error in finding that the opinion of Dr. Muniswamy was not entitled to greater weight.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's arguments lack merit, and the ALJ's decision is supported by substantial evidence. Accordingly, **IT IS ORDERED** as follows:

1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

2) Plaintiff's Motion for Judgment on the Administrative Record and Pleadings Pursuant to Fed. R. Civ. P. 12(c) (R. 13) is hereby **DENIED**;

3) Defendant Commissioner's Motion for Summary Judgment (R. 20) is hereby **GRANTED**; and

4) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 30th day of September, 2019.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\social security\Orders\18-107 Bischoff MOO.docx